## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISON

| | |
|---|---|
| **Joseph Ferri**, | |
| *Plaintiff,* | Case No: |
| v. | |
| **Enova International, Inc.,** **NC Financial Solutions, LLC,** *and* **CNU Online Holdings, LLC,** | **JURY TRIAL DEMANDED** |
| *Defendants.* | |

## COMPLAINT AND DEMAND FOR JURY TRIAL

**COMES NOW** the Plaintiff, **Joseph Ferri** ("**Mr. Ferri**"), by and through his attorneys, Seraph Legal, P.A., and complains of the Defendants, **Enova International, Inc.** ("**Enova**"), **NC Financial Solutions, LLC** ("**NC Financial**"), and **CNU Online Holdings, LLC,** ("**CNU Holdings**") (collectively, the "**Defendants**"), stating as follows:

## PRELIMINARY STATEMENT

1.      This is an action by Mr. Ferri against the Defendants for violations of the *Racketeer Influenced and Corrupt Organizations Act*, 18 U.S.C. § 1961, *et seq.* ("**RICO**"), the *Florida Consumer Collection Practices Act*, Fla. Stat. § 559.55, *et seq.*

("**FCCPA**"), the Florida *Civil Remedies for Criminal Practices Act*, Fla. Stat. § 772.101, *et seq.* ("**CRCPA**"), and for unjust enrichment.

## JURISDICTION AND VENUE

2.    Subject matter jurisdiction for Plaintiff's RICO claims arises under 18 U.S.C. § 1965 and 28 U.S.C. § 1331, as RICO is a federal statute, and the relevant transactions were committed within Seminole County, Florida.

3.    This Court has supplemental jurisdiction over Plaintiff's CRCPA and FCCPA claims under 28 U.S.C. § 1367.

4.    The Defendants are subject are subject to the jurisdiction of this Court pursuant to Fla. Stat. § 48.193 and Fed. R. Civ. P. 4(k).

5.    Venue is proper in the Middle District of Florida pursuant to 28 U.S.C. § 1391(b)(2), because the acts complained of were committed and/or caused by the Defendants within the Middle District of Florida.

## PARTIES

6.    **Mr. Ferri** is a natural person who at all times relevant has resided in the City of Lake Mary, Seminole County, Florida.

7.    Mr. Ferri is a *Consumer* as defined by the FCCPA, Section 559.55(8), Fla. Stat.

8.      **Enova, NC Financial, and CNU Holdings** are all Delaware corporations with principal business addresses of **175 W Jackson Blvd., Suite 1000, Chicago, IL 60604.**

9.      The Defendants' Delaware registered agent is **The Corporation Trust Company, Corporation Trust Center, 1209 Orange St., Wilmington, DE 19801.**

10.     As of December 29, 2021, NC Financial was not registered to conduct business in the State of Florida, having withdrawn its application to conduct business in Florida.

11.     Enova is the parent company of CNU Holdings.

12.     CNU Holdings, in turn, is the parent company of NC Financial.

13.     The Defendants jointly operate www.NetCredit.com ("**NetCredit**"), an online lending platform.

## FACTUAL ALLEGATIONS

### NetCredit Makes Illegal Loan to Mr. Ferri

14.     On or about August 31, 2021, Mr. Ferri received a personal loan from NetCredit in the principal amount of $8,630 (the "**Loan**"). **SEE PLAINTIFF'S EXHIBIT A.**

15.     The interest rate on the Loan exceeded **60%** annually and had a stated finance charge of $16,910.48, meaning Mr. Ferri was required to pay a total of $25,540.48 on an $8,630 Loan. *Id.*

16.     As the date of this filing, Mr. Ferri has made approximately $5,472 in payments towards the Loan and continues to make payments.

17.     Despite making $5,472 towards the $8,630 principal, the Defendants claim Mr. Ferri still owed $8,121 as of October 2022.

18.     The Loan was marketed as a *personal loan* and was used by Mr. Ferri for personal and household expenses.

19.     The balance on the Loan arose from transactions which were primarily for family, personal, or household purposes, *specifically* purchases for consumer goods and services, and therefore meets the definitions of *Debt* under the FCCPA, Fla. Stat. § 559.55(6).

20.     Fla. Stat. § 687.071(2) renders loans made with annual interest rates greater than **25%** a second-degree misdemeanor.

21.     Fla. Stat. § 687.071(3) renders loans made with annual interest rates greater than **45%** a third-degree felony.

22.     Fla. Stat. § 687.071(7) renders any loan in violation of Fla. Stat. § 687.701, and any debt stemming from such extension of credit, void and unenforceable.

23.     The Loan made by the Defendants to Mr. Ferri was thus void *ab initio*. *See Stubblefield v. Dunlap*, 148 Fla. 401, 4 So.2d 519 (1941); *Pushee v. Johnson*, 123 Fla. 305, 166 So. 847 (1936); *River Hills, Inc. v. Edwards*, 190 So.2d 415 (Fla. 2d DCA 1966).

*Richter Jewelry Co. v. Schweinert*, 169 So. 750, 758-59 (Fla. 1935) (criminally usurious loans are "void as against the public policy of the state as established by its Legislature.")

24.    The Loan is therefore an *unlawful debt* pursuant to Fla. Stat. § 772.102(2).

25.    Florida law prohibits any recovery of the principal on criminally usurious loans. *Rollins v. Odom*, 519 So. 2d 652, 656 (Fla. Dist. Ct. App. 1988).

26.    Since the Loan was an unlawful debt, the Defendants had no legal right to collect any interest or principal from Mr. Ferri concerning their usurious Loan.

27.    Despite the Loan being illegal and the collection of interest at the rate of 64.80% being a felony in Florida, the Defendants nonetheless collected installment payments from Mr. Ferri on the Loan.

28.    The proceeds provided to Mr. Ferri concerning the Loan were wired to Mr. Ferri's bank account in Seminole County through the ***Automated Clearing House*** ("**ACH**") network.

29.    The fact that Mr. Ferri took the loan out from his home in Florida, had the proceeds wired to his bank account in Florida, and received collection correspondence in his home in Florida, establishes that the transaction occurred in

Florida and is therefore subject to Florida law. *See California v. Iipay Nation of Santa Ysabel*, 898 F.3d 960 (9th Cir. 2018).

## NetCredit Engages in Rent-a-Bank Scheme with Republic Bank

30.     NetCredit is one of several online lenders owned by Enova.

31.     All of Enova's online lending platforms carry high interest rates.

32.     Because almost every state, including Florida, renders NetCredit's interest rates criminally usurious, the Defendants "partner" with Republic Bank & Trust Company ("**Republic Bank**"), a bank with primary offices in Louisville, Kentucky.

33.     Purportedly, Republic Bank originates the loan, and then assigns the loan to NetCredit, which "services" the loan.

34.     The arrangement is colloquially known as a "rent-a-bank" scheme.

35.     However, at no point is Republic Bank the *true lender* of the NetCredit loans, nor is any capital belonging to Republic Bank at risk.

36.     Such "rent-a-bank" schemes simply allow predatory lenders like the Defendants to make loans to consumers in states which prohibit usury, including Florida, with a modicum of legal cover.

37.     Republic Bank, as a chartered bank, is not subject to foreign state interest rate limits pursuant to the National Bank Act; it can export the maximum

interest rate in its home state to lend to borrowers in other states with stricter usury laws. *See* 12 U.S.C. § 85.

38.     Republic Bank, though, is in no way, shape or form the "true lender" of Mr. Ferri's Loan.

39.     Republic Bank had virtually nothing to do with the marketing, underwriting, servicing, and/or collection of the Loan.

**Enova's Statements to Investors Indicate Ownership of NetCredit Loans**

40.     Enova – a publicly-traded company on the New York Stock Exchange with a market capitalization of over $1 billion – claims on its website that it has funded over $40 billion of loans. **SEE PLAINTIFF'S EXHIBIT B.**

41.     Enova's 2022 8-K filing with the Securities and Exchange Commission also claims that Enova has made over $40 billion of loans. *See* Enova International, Inc., Current Report (Form 8-K) (July 28, 2022).

42.     Enova highlighted that Enova *itself* has over $2 billion of loan balances receivable at present. *Id.*

43.     Enova's stock prospectus repeatedly highlights the fact that it considers loan products like NetCredit to be its loans and property. *See* Enova International, Inc., Prospectus Supplement No. 6 (Form 424B3) (Sept. 15, 2015).

44.    The origination, servicing, underwriting, and collection of NetCredit loans are performed by Defendants through Enova's own proprietary technology (some of which it has trademarked as The Colossus Analytic Engine). *Id.*

45.    Enova's 2022 10-K filing further explains that it is Enova's proprietary technology that is used to:

    a.  operate websites which customers use to apply for loans;

    b.  maintain customer information;

    c.  market its loans;

    d.  make credit and financing decisions throughout the customer relationship; and,

    e.  manage the external interface for funds transfers and provide daily accounting, reconciliation, and reporting functions.

*See* Enova International, Inc., Annual Report (Form 10-K) (Feb. 28, 2022).

46.  Of note, these statements contradict claims made on the NetCredit.com website which claims, in fine print at the bottom, "all NetCredit loans and lines of credit are underwritten by" Republic Bank.

47.    Any underwriting criteria established "by" Republic Bank is simply a rubber-stamp of the criteria established by the Defendants.

48.    Republic Bank's name does not appear a single time in Enova's 8-K and 10-K disclosures.

49.     Presumably, if Republic Bank were the true lender of NetCredit loans, the financial condition of Republic Bank would be of interest to investors of Enova.

50.     The consumer-facing website NetCredit.com also discloses that in some states, such as Delaware, NetCredit loans are "are offered by a member of the NetCredit family of companies."

51.     Yet in other states, like Florida, the loans are "funded by Republic Bank & Trust Company, Member FDIC."

### Republic Bank Serves as Strawman for Defendants

52.     The Defendants essentially launder NetCredit loans through Republic Bank, claiming (except in statements to investors) that Republic Bank is the lender.

53.     However, Republic Bank was not the true lender of Mr. Ferri's Loan.

54.     Republic Bank simply receives a guaranteed fee, per loan, for renting its name and status as an FDIC-insured bank to the Defendants.

55.     Republic Bank and the Defendants have engaged in a scheme in which Republic Bank literally could not lose.

56.     Republic Bank gets paid roughly 5% of the value of the loan as its fee, irrespective of whether the consumer ever repays the loan.

57.     The Defendants indemnify Republic Bank against any losses and, in a complex series of transactions utilizing several different limited liability

companies, money "loaned" by Republic Bank is immediately repaid to it by the Defendants, who then acquire "servicing" rights and become an assignee of the loan.

58.     The capital to fund the loans is provided by the Defendants.

59.     The Defendants also assume the risk of bad debt concerning its loans, meaning that its capital, not Republic Bank's, is at risk.

60.     Additionally, Republic Bank's economic interests are protected due to its agreement with the Defendants, which includes a stipulation that the Defendants maintain cash collateral in a Republic Bank account to secure its obligations to purchase the loans supposedly made by Republic Bank.

61.     The Defendants, directly and through subsidiaries, also act as the servicer for NetCredit loans.

62.     The Defendants reconcile the accounts, posts payments and other credits to the accounts, and provide periodic billing statements to consumers.

63.     As per the Defendants' business model, once Republic Bank "made" the Loan to a consumer like Mr. Ferri, the Loan was immediately assigned to the Defendants, or one of their subsidiary entities.

64.     In sum, the Defendants, and not Republic Bank, are the true lender of Mr. Ferri's Loan, because they have the predominant economic interest in loans made to consumers like him. *See Fulford v. Marlette Funding, LLC*, No. 17CV30376

and *Fulford v. Avant of Colorado, LLC*, No. 17CV30377 (Colo. Dist. Ct. Denver County Aug. 13, 2018). See also, e.g., *State Bank v. Strong*, 651 F.3d 1241 (11th Cir. 2011); *Easter v. Am. W. Fin.*, 381 F.3d 948, 957 (9th Cir. 2004); *CFPB v. CashCall, Inc.*, No. CV 15-7522-JFW (RAOx), 2016 WL 4820635 (C.D. Cal. Aug. 31, 2016); *Penn v. Think Fin., Inc.*, No. 14-cv-7139, 2016 WL 183289 (E.D. Pa. Jan. 14, 2016); *Goleta Nat'l Bank v. Lingerfelt,* 211 F. Supp. 2d 711 (E.D. N.C. 2002); *CashCall, Inc. v. Morrisey*, No. 12-1274, 2014 WL 2404300 (W. Va. May 30, 2014) (memorandum decision); *Ubaldi v. SLM Corp.*, 852 F. Supp. 2d 1190 (N.D. Cal. 2012); and *Eul v. Transworld Sys.*, No. 15 C 7755, 2017 WL 1178537 (N.D. Ill. Mar. 30, 2017).

65.     After a is assigned to the Defendants, the Defendants then proceed to collect usurious interest and fees from consumers like Mr. Ferri.

66.     Defendants reported Mr. Ferri's NetCredit Loan to various nationwide **Consumer Credit Reporting Agencies** ("**CRAs**"), including Trans Union, LLC ("**Trans Union**"). **SEE PLAINTIFF'S EXHIBIT C.**

67.     Defendants' tradeline makes no reference to Republic Bank. *Id.*

68.     The address associated with the tradeline is the Defendants' address in Chicago. *Id.*

69.     By reporting the account to a CRA, the Defendants were attempting to ensure repayment, by making clear that non-payment of its usurious loan would result in severe damage to Mr. Ferri's credit reports and scores.

70.     Reporting a debt to a CRA is an attempt to collect the debt alleged therein. *See, e.g., Edeh v. Midland Credit Management, Inc.*, 748 F. Supp. 2d 1030 (D. Minn. 2010) ("The Court has learned, through its work on countless FDCPA cases, that threatening to report and reporting debts to CRAs is one of the most commonly-used arrows in the debt collector's quiver.")

71.     However, the Defendants, being non-bank assignees of the NetCredit Loan, have no legal ability to collect 64.80% interest on the Loan as this rate is criminally usurious in Florida. *See Madden v. Midland Funding, LLC*, 786 F.3d 246 (2d Cir. 2015) (rejecting "valid-when-made" argument that would have allowed non-bank assignee to collect interest at higher than lawful rates).

72.     Additionally, Florida's "usury statutes show clear legislative intent to prevent accomplishment of a usurious scheme by indirection, and the concealment of the needle of usury in a haystack of subterfuge." *Pinchuck vs. Canzoneri*, 920 So. 2d 713, 715-16, (Fla. 4th DCA, 2006).

73.     RICO defines an "enterprise" as "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4).

74.     In *Boyle v. United States*, the Supreme Court recognized that RICO's definition of enterprise was "obviously broad" and included an "association in fact" enterprise. 556 U.S. 938, 944 (2009).

75.     Thus, an enterprise may be a legally recognized entity like a corporation or an "association in fact enterprise," *i.e.*, "a group of persons associated together for a common purpose of engaging in a course of conduct." *United States v. Turkette*, 452 U.S. 576, 583 (1981); *Boyle*, 556 U.S. at 948 ("[A]n association-in-fact enterprise is simply a continuing unit that functions with a common purpose.").

76.     Here, Defendants are an association in fact enterprise who are associated together for the common purpose of making, collecting, and profiting off illegal loans.

77.     The Defendants, through their involvement with the NetCredit extensions of credit with Republic Bank, constitute an *Enterprise* under RICO, 18 U.S.C. § 1961(4), and the CRCPA, § 772.102(3), Fla. Stat.

78.     Mr. Ferri has been damaged in that he has paid for an extension of credit which is void and usurious pursuant to Florida law.

79.     Mr. Ferri also suffered severe emotional distress as a result of the Defendants' attempts to collect an unenforceable account.

80.     Mr. Ferri has hired the aforementioned law firm to represent him in this matter and has assigned his right to fees and costs to such firm.

## COUNT I
## <u>VIOLATIONS OF RICO – 18 U.S.C § 1962(c)</u>

81.    Mr. Ferri incorporates Paragraphs 1 – 80 as if fully restated herein.

82.    The Defendants, through their common purpose of engaging in a course of conduct to profit from NetCredit.com, constitute an "enterprise" under RICO, 18 U.S.C. § 1961(4).

83.    The NetCredit Loan to Mr. Ferri was an "unlawful debt" pursuant to 18 U.S.C. § 1961(6) because it is unenforceable under Florida's laws regarding usury and was incurred in connection with Defendants' business of lending money at a usurious rate that vastly exceeds what is allowed under Florida law.

84.    The Defendants each associated with the enterprise and participated in the affairs of the enterprise, which existed for the purpose of collection of an unlawful debt.

85.    The Defendants' participation in the enterprise violated **18 U.S.C. § 1962(c)** and caused Plaintiff to incur costs directly and proximately related to their attempts to collect unlawful extensions of credit.

86.    The Defendants utilized the internet, telephone, and/or mail to reach across state lines in the operation of the NetCredit.com lending platform, through:

   a.   collection calls;

   b.   credit reporting;

c.  electronic mail; and,

d.  an ACH deposit to Mr. Ferri's Florida bank account.

**WHEREFORE**, Mr. Ferri respectfully requests this Honorable Court enter judgment against the Defendants, jointly and severally, ordering:

a.  Threefold the amount of actual damages of at least **$5,472** (for a total of **$16,416** as of the date of this filing);

b.  Reasonable costs and attorneys' fees pursuant to 18 U.S.C § 1964(c);

c.  Any other relief this Court deems equitable and proper under the circumstances.

## COUNT II
## <u>VIOLATIONS OF RICO – 18 U.S.C § 1962(d)</u>

87.  Mr. Ferri incorporates Paragraphs 1 – 80 as if fully restated herein.

88.  The Defendants violated **18 U.S.C § 1962(d)** by conspiring with each other, and other persons, to issue and collect unlawful debts through the NetCredit.com lending platform.

89.  The Defendants each took actions in furtherance of this conspiracy when they, at various times, did the following:

a.  issued the NetCredit Loan to Mr. Ferri;

b.  initiated ACH deposits and withdrawals to and from Mr. Ferri's bank account;

c.   attempted collection of the Loan through emails to Mr. Ferri;

d.   attempted collection of the Loan through phone calls to Mr. Ferri; and/or,

e.   claimed Republic Bank ownership of NetCredit.com accounts to provide a guise of issuance from a bank.

90.   The Defendants also each agreed to the overall objective of the conspiracy – to issue and collect unlawful loans through NetCredit.com.

91.   The Defendants utilized the internet, telephone, and/or mail to reach across state lines in furtherance of their conspiracy.

**WHEREFORE**, Mr. Ferri respectfully requests this Honorable Court enter judgment against the Defendants, jointly and severally, ordering:

a.   Threefold the amount of actual damages of at least **$5,472** (for a total of **$16,416** as of the date of this filing);

b.   Reasonable costs and attorneys' fees pursuant to 18 U.S.C § 1964(c);

c.   Any other relief this Court deems equitable and proper under the circumstances.

## COUNT III
## VIOLATIONS OF THE FCCPA – FLA. STAT. § 559.72(9)

92.   Mr. Ferri incorporates Paragraphs 1 – 80 as if fully restated herein.

93.     The Defendants violated **Fla. Stat. § 559.72(9)**, when they attempted to collect – and did collect – the NetCredit Loan made to Mr. Ferri. The Loan was illegitimate and unenforceable due to the application of interest rates in excess of 64% percent annually on the principal amount of the Loan, in violation of Fla. Stat. § 687.071, and the Defendants knew, or should have known, that the Loan was unenforceable in Florida.

94.     The Defendants violated **Fla. Stat. § 559.72(9)**, when they asserted rights which do not exist, specifically, the right to collect the Loan from Mr. Ferri, when the Loan was not legally owed pursuant to Florida law.

95.     The Defendants attempted to enforce the unlawful debt and/or asserted the legal right to enforce the unlawful debt when they: (a) attempted collection of the NetCredit Loan via emails to Mr. Ferri; (b) attempted collection of the NetCredit Loan via calls to Mr. Ferri; and, (c) initiated ACH debits from Mr. Ferri's checking account in an attempt to obtain payment.

96.     The Defendants' actions were willful, intentional, and done for the express purpose of collecting an unenforceable debt from Plaintiff and profiting from such collection.

**WHEREFORE,** Mr. Ferri respectfully requests this Honorable Court enter judgment against the Defendants, jointly and severally, for:

a.      Statutory damages of **$1,000.00** pursuant to Fla. Stat. § 559.77(2);

b.      Actual damages pursuant to Fla. Stat. § 559.77(2);

c.      Injunctive relief preventing the Defendants from attempting to collect the alleged Loan from Mr. Ferri pursuant to Fla. Stat. § 559.77(2);

d.      Reasonable costs and attorney's fees pursuant to Fla. Stat. § 559.77(2); and,

e.      Such other relief that this Court deems just and proper.

**COUNT IV**
**VIOLATIONS OF THE CRCPA – FLA. STAT. § 772.103(3)**

97.      Mr. Ferri incorporates Paragraphs 1 – 80 as if fully restated herein.

98.      The Defendants, through their participation in the NetCredit.com lending platform, constitute an "enterprise" under CRCPA, Fla. Stat. § 772.102(3).

99.      The Defendants each associated with the enterprise and participated in the affairs of the enterprise, directly or indirectly, for the purpose of the collection of unlawful debt.

100.      The Defendants' participation in the enterprise violated **Fla. Stat. § 772.103(3)** and caused Plaintiff to repay amounts and incur fees as the direct result of Defendants' attempts to collect payment on an unlawful loan.

101.      The Defendants intent is evident from their business model, where they have created a sham partnership with Republic Bank in an attempt to assert exemption from state usury laws.

**WHEREFORE,** Mr. Ferri respectfully requests this Honorable Court enter judgment against the Defendants for:

a. Threefold the amount of actual damages of at least **$5,472** (for a total of at least **$16,416**) or, in the alternate, the statutory minimum of **$200**, whichever is greater, pursuant to Fla. Stat. § 772.104(1);

b. Reasonable costs and attorneys' fees pursuant to Fla. Stat. § 772.104(1);

c. Any other relief this Court deems equitable and proper under the circumstances.

## COUNT V
## <u>VIOLATIONS OF THE CRCPA – FLA. STAT. § 772.103(4)</u>

102.    Mr. Ferri incorporates Paragraphs 1 – 80 as if fully restated herein.

103.    The Defendants violated **Fla. Stat. § 772.103(4)** by conspiring with Republic Bank and each other and/or endeavoring to issue and collect unlawful debts through the NetCredit.com lending platform.

104.    The Defendants each took actions in furtherance of this conspiracy when they, at various times, did the following:

a. issued the NetCredit Loan to Mr. Ferri;

b. initiated an ACH deposit to Mr. Ferri's bank account;

c. made attempts to withdraw money via ACH debit;

d. attempted collection of the Loan through emails to Mr. Ferri;

Page **19** of **29**

    e.  attempted collection of the Loan through phone calls to Mr. Ferri; and/or,

    f.  claimed Republic Bank ownership of NetCredit.com accounts to provide a guise of issuance from a bank.

105.   The Defendants each agreed to the overall objective of the conspiracy – to issue and collect unlawful loans through NetCredit.com.

**WHEREFORE,** Mr. Ferri respectfully requests this Honorable Court enter judgment against the Defendants for:

    a.  Threefold the amount of actual damages of at least **$5,472** (for a total of at least **$16,416**) or, in the alternate, the statutory minimum of **$200**, whichever is greater, pursuant to Fla. Stat. § 772.104(1);

    b.  Reasonable costs and attorneys' fees pursuant to Fla. Stat. § 772.104(1);

    c.  Any other relief this Court deems equitable and proper under the circumstances.

## COUNT VI
## UNJUST ENRICHMENT

106.   Mr. Ferri incorporates paragraphs 1 – 80 as if fully stated herein.

107.   Mr. Ferri conferred a benefit to the Defendants in the form of payments totaling at least $5,472 to NetCredit.

108.   NetCredit had no legal right to the collection of these payments and was therefore unjustly enriched.

109.   <u>Any</u> amount repaid on an illegal, usurious debt deemed void *ab initio* by state law constitutes unjust enrichment, even if less than the original amount of the loan. *See, e.g., Williams et al. vs. Big Picture Loans, LLC*, case 3:17-cv-461, E.D. Virginia, July 20, 2021.

110.   The Defendants knew that they had no legal right to the collection of these payments, as evidenced by its business model, but chose to accept the funds from Mr. Ferri regardless.

**WHEREFORE,** Mr. Ferri respectfully requests this Honorable Court enter judgment against the Defendants for:

a.   Actual damages for the payments conferred to the Defendants pursuant to the void loan; and,

b.   Any other relief this Court deems equitable and proper under the circumstances.

## DEMAND FOR JURY TRIAL

Mr. Ferri hereby demands a jury trial on all issues so triable.

Respectfully submitted this October 17, 2022, by:

**SERAPH LEGAL, P. A.**

*/s/ Brandon D. Morgan*
Brandon D. Morgan, Esq.
Florida Bar Number: 1015954
BMorgan@seraphlegal.com

*/s/ Thomas M. Bonan*
Thomas M. Bonan, Esq.
Florida Bar Number: 118103
TBonan@seraphlegal.com

1614 North 19th Street
Tampa, FL 33605
Tel: 813-567-1230
Fax: 855-500-0705
*Counsel for Plaintiff*

## ATTACHED EXHIBIT LIST
A    NetCredit's Loan Agreement with Mr. Ferri, August 31, 2021 - Excerpt
B    Enova's Website
C    Mr. Ferri's Trans Union Consumer Disclosure, October 12, 2022, NetCredit Loan Tradeline - Excerpt